**MILES L, KAVALLER**
**A PROFESSIONAL LAW CORPORATION**
Miles L. Kavaller, Esq. - SBN 73950
Encino Law Center
15915 Ventura Boulevard, Penthouse One
Encino, CA 91436
Telephone: (818) 728-4821
Facsimile: (818) 474-7180
E-Mail: mkavaler1@earthlink.net

Attorney for Plaintiff, **Advantage Freight Network, LLC**

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA - FRESNO

| | |
|---|---|
| ADVANTAGE FREIGHT NETWORK, LLC, an Illinois limited liability corporation </br> Plaintiff, </br> VS. </br> JAVIER SANCHEZ d/b/a J. SANCHEZ TRUCKING and CARLOS ORTIZ d/b/a CARLOS ORTIZ TRUCKING </br> Defendants. | CASE NO. 1:07-CV-00827-LJO-SMS </br></br> **DECLARATIONS OF MILES L. KAVALLER, ESQ., TRINA GRAMI AND RYAN DAUBE AND EXHIBITS IN SUPPORT OF PLAINTIFF ADVANTAGE FREIGHT NETWORK, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT.** </br></br> [Served and Filed concurrently with Notice of Motion and Motion for Summary Judgment; Statement of Undisputed Facts and Conclusions of Law; Memorandum of Points and Authorities] </br></br> **Date : 9/10/08** </br> **Time: 8:30 A.M.** </br> **Place: Courtroom 4** </br> TELEPHONE APPEARANCE |

DECLARATIONS MILES L. KAVALLER, ESQ., TRINA GRAMI AND RYAN DAUBE AND EXHIBITS IN SUPPORT OF PLAINTIFF ADVANTAGE FREIGHT NETWORK, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT.

1

# DECLARATION OF MILES L. KAVALLER

Miles L. Kavaller, declares as follows:

1.     I am an attorney at law, a member in good standing of the State Bar of California and a member of the this Federal Court.  I am the attorney of record for plaintiff Advantage Freight Network, LLC, in this action.  I have personal knowledge of the facts set forth herein.

2.     Attached hereto as Exhibit "1" is the original Answer of Javier Sanchez, filed on 7/26/2007 in this case.

3.     Attached hereto as Exhibit "2" is the original Answer of Carlos Ortiz, filed on 11/30/2007 in this case.

4.     Attached hereto as Exhibit "3" is a copy of the Preliminary Police Report prepared by the Los Angeles Police Department in connection with the theft of the Shipment at issue in this case.

I declare under penalty of perjury under the laws of the United States of America (28 U.S.C. §1746) that the foregoing is true and correct.

Dated this 9th day of July 2008 at Encino, California.

_____
MILES L. KAVALLER

EXHIBIT 1

FILED

JUL 26 2007

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
        DEPUTY CLERK

Case No: 1:07-CV-00827-LJO-SMS

## Advantage Freight Network, Inc. vs. Javier Sanchez & Carlos Ortiz

**Purpose:** This letter serves as a response to Advantage Freight Network Inc. (AFN) Claim.

On November 10, 2006, Anthony Iturralde, AFN Representative, contracted my transportation services to deliver Best Buy merchandise from Puyallup, WA to Dinuba, CA. The contract stipulated that the load had to be picked up on November 10, 2006 and delivered on November 13, 2006 at Best Buy Distribution Center in Dinuba, CA with an option to drop off the trailer in Best Buy's facilities. The value of the load and merchandise was not disclosed.

On November 10, 2006, my truck broke down in Medford, OR, which did not permit me to personally pick up and deliver this load. Due to the opposition I encountered and my desire to honor the contract with AFN, I contacted one of my colleagues, Mr. Carlos Ortiz, to subcontract the load. Having a Contract with AFN's Company, Mr. Carlos Ortiz agreed to have one of his drivers (Mr. Alfredo Palma) pick up the load since he was in Seattle, WA, approximately 25 miles away from Puyallup, WA. Mr. Alfredo Palma picked up the load at Performance Team North West's facility in Puyallup, WA.

On November 13, 2006, Mr. Alfredo Palma tried to deliver the load at Best Buy's Distribution Center in Dinuba, CA as requested by AFN and the load was refused. Mr. Palma requested permission to park the truck at Best Buys' facilities and the Security

Guard on duty denied the request. Mr. Palma was told to return on November 15, 2006 at 15:30 hrs. to deliver the load. I immediately contacted Mr. Iturralde to inform him of the current situation as I considered it being of high importance, but he was not available. I let him a message explaining the situation and the risk involved, but my phone call was not returned. I continued to call Mr. Iturralde throughout the day, but did not have any luck. The Company's Admen returned my phone call to say that Mr. Iturralde was assisting other matters and that he would get back to me whenever he had a chance. In the mean time Mr. Palma waited parked on the street for Mr. Iturralde to find a solution or provide new instructions. Mr. Iturralde never contacted me.

Due to Mr. Iturralde's lack of communication, Mr. Alfredo Palma decided to go home in Los Angeles, CA on November 14, 2006. Mr. Palma took the load with him as he owns the truck and the truck being his only way of transportation. On November 14, 2006 around midnight, the load was stolen from Mr. Palma's truck. As soon as the police contacted me to inform me of the robbery, I called Me. Iturrlade and me Insurance. After the misfortunate event contacted me in a very aggressive manner. He said, "The Load was worth 250,000 dollars" and asked how I was going to pay to fix the situation. I was under the Impression that the load was worth under 100,000 dollars Providing Mr. Iturralde with a copy of my insurance before engaging in the contract. Days later, I received a package in the mail from AFN's Claim stating that the load was worth over 540,540. I immediately informed my insurance and they refused to pay AFN's claim due to the truck being owned by Mr. Ortiz and the load not being in my possession when

stolen. I informed Mr. Iturralde of the situation with my Insurance Company and never heard from him again.

I am distressed to receive a law sue against me due to:

1. AFN's being fully aware of my Maximum insurance coverage of 100,000.

2. Best Buy's neglecting the contact established with AFN by:

a) Not accepting the load

b) Not Allowing Mr. Palma to park in the Facility

Sincerely,

Javier Sanchez

x *Javier Sanchez*

3724 S. Dans st.
Visalia, Ca. 93277
559- 805- 4130

EXHIBIT 2

FILED

NOV 3 0 2007

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
C. ESTEVES
DEPUTY CLERK

November 29th, 2007

Case No: 1:07-CV-00827-LIO-SMS

### *Advantage Freight Network, Inc. VS Javier Sanchez & Carlos Ortiz*

To Whom It May Concern: Responding to the lawsuit of advantage Freight Network Inc.

On November 10 2006, Javier Sanchez contacted me to offer me a load from Puyallup WA to Dinuba CA. He mentioned to me that his tractor had broken down in Medford OR. This stopped him from doing the work. He explained to me that the load needed to be picked up that day and delivered on November 13 2006 with the option of the trailer to be dropped in the recipient's parking lot until the product was unloaded. At that time my second tractor was in the area of Puyallup WA Alfredo Palma was the driver handling the tractor and I accepted to take the load from Mr. Sanchez.

Alfredo picked up the load that same day of November 10 2006 and he tried to deliver the merchandise on the day of November 13 2006 as I had agreed with Mr. Sanchez. Alfredo arrived and went to be registered so that the recipient could unload him. Alfredo was then told that they could not receive the product until after November 15 2006 at 15:30 hours and that he could not station the trailer on the company's parking lot. Immediately I contacted Javier Sanchez to report the situation to him. Javier Sanchez told me that he could not establish contact with the person that contracted him, and there for he could not resolve the situacion. I had no other choice but to tell my driver Alfredo Palma to park outside of the company and to wait until the recipient unloaded him.

My chauffeur called me with the news that he had been robbed with my tractor, trailer, and the merchandise. Immediately I contacted my Insurance to report the robbery. Before Javier had called me to offer me this trip, He was very conscious that my insurance alone covers a maximum of 100,000 dollars for the loss of a load. If Mr. Sanchez had told me that the merchandise had a value of more than 100,000 dollars I would have not accepted for Alfredo Palma to be in charge of doing the work. When I reported to my insurance of the situation, my insurance refused to pay the maximum of the cover (100,000 dollars) because of the following reasons: A) Alfredo Palma transported the load from Puyallup WA to Dinuba CA arriving with the product complete and intact ready to be unloaded. B) My agreement with the Mr. Sanchez was that the

1

November 29ᵗʰ, 2007

trailer had my permission to park outside of the company until the recipient could unload him.

I am distressed to receive a law suit from *Advantage Freight Network*, INC (AFN) due to that: 1) Javier Sanchez was aware that my insurance only covers a maximum of 100,000 dollars in the event that the product being transported was to be stolen. 2) The negligence of the recipient to authorize Alfredo Palma to station the trailer with the product in the property of the recipient until the product was unloaded.

Sincerely,

Carlos Ortiz

Carlos Ortiz
762 Sugar Pine Dr.
Lathrop CA 95330
480.757.2729

2

EXHIBIT 3

**150 North Los Angeles Street # 319**
**Los Angeles, California 90012**
**Office: 213-847-3786**
**Fax: 213-847-3791**



**LAPD CARGO-HIJACK**

# Fax

| To: | PAT INTREPIDO | From: | Detective Robert Rivera |
|---|---|---|---|
| **Fax:** | 213-847-3791 | **Pages:** | 4 |
| **Phone:** | 213-847-3786 | **Date:** | 11/20/06 |
| **Re:** | REPORT | **CC:** | [Click here and type name] |

☐ **Urgent**    ☑ **For Review**    ☐ **Please Comment**    ☐ **Please Reply**    ☐ **Please Recycle**

● **Comments:**

**ATTENTION:  PAT**

**HERE IS THE (PRELIMINARY) REPORT [PRIMA FACIE] – FOLLOW-UP REPORT TO FOLLOW.**

SHOTS FIRED

Page 1 of 12

□ COMBINED EVID. REPORT
□ MULTIPLE DRS ON THIS REPORT

## Los Angeles Police Department
### PRELIMINARY INVESTIGATION of

GRAND THEFT (CARGO) / CCD

INVEST. DIV. / DR. 060423348

**PRELIMINARY CASE SCREENING**
- ■ SUSPECT / VEHICLE NOT SEEN
- □ PRINTS OR OTHER EVIDENCE NOT PRESENT
- □ MO NOT DISTINCT
- □ PROPERTY LOSS LESS THAN $5000
- ■ NO SERIOUS INJURY TO VICTIM
- ■ ONLY ONE VICTIM INVOLVED

**VICTIM**
LAST NAME, FIRST, MIDDLE (OR NAME OF BUSINESS): CARLOS ORTIZ TRUCKING
SEX M   DESC. H   AGE 35   DOB 6/2/71

ADDRESS: R-
B- 3112 BAGWORTH CT   SAN JOSE   ZIP 95148   PHONE 408/757/2729 X

DR. LIC. NO. (IF NONE, OTHER ID & NO.): 9838842
FOREIGN LANGUAGE SPOKEN (IF APPLICABLE): SPANISH
OCCUPATION: TRUCK DRIVER

**PREMISES** (SPECIFIC TYPE): STREET / VEH   □ ATM

USE OF FORCE

**ENTRY** 459/BFMV
- □ FRONT
- □ REAR
- □ SIDE
- □ ROOF
- □ FLOOR
- □ OTHER

POINT OF ENTRY

POINT OF EXIT

LOCATION OF OCCURRENCE: CALADA @ UNION PACIFIC AVE   □ SAME AS #   □ RES.   □ BUS. 799
PRINTS BY PRELIM/INV. ATTEMPT Y N   OBTAINED Y N

METHOD

DATE & TIME OF OCCURRENCE: 11/14/06 1300  11/15/06 0700
DATE & TIME REPORTED TO PD: 11/15/06 0845

INSTRUMENT / TOOL

TYPE PROPERTY STOLEN / LOST / DAMAGED: ELECTRONICS   □ 3,4 GIVEN
STOLEN / LOST 546K   RECOVERED 0   EST. DAMAGED ARSON/VAND.

**VICT'S VEH.** (IF INVOLVED) - YEAR, MAKE, TYPE, COLOR, LIC. NO.

NOTIFICATIONS (PERSON & DIVISION)

CONNECTED REPORTS (TYPE & DR): VEHICLE 060423347

**MO** IF LONG FORM, LIST UNIQUE ACTIONS. IF SHORT FORM, DESCRIBE SUSPECT'S ACTIONS IN BRIEF PHRASES, INCLUDING WEAPON USED. IF SHORT FORM AND IF NECESSARY, IF ANY OF THE MISSING ITEMS ARE POTENTIALLY IDENTIFIABLE, ITEMIZE AND DESCRIBE ALL ITEMS MISSING IN THIS INCIDENT IN THE NARRATIVE.

UNKNOWN SUSPECT(S) STOLE A TRACTOR-TRAILER LOADED WITH ELECTRONICS DESTINED TO BEST BUY.

□ MOTIVATED BY HATRED / PREJUDICE
□ DOMESTIC VIOLENCE

**REPORTING EMPLOYEE(S)**
INITIAL(S), LAST NAME: R. RIVERA   SERIAL NO. 2948   DIV / DETAIL CCD   CATS

**PERSON REPORTING**
SIGNATURE   OR RECEIVED BY PHONE – □
NOTE: IF SHORT FORM AND VICTIM / PR ARE NOT THE SAME, ENTER PR INFORMATION IN INVOLVED PERSONS SECTION.

DSD/SEU

Complete below sections if any Preliminary Case Screening boxes are not checked.

**SUSP'S VEHICLE**
YEAR   MAKE   MODEL   TYPE

COLOR(S): NVS

VEH. LIC. NO.   STATE

| Interior | | Exterior | | Body | | Windows | |
|---|---|---|---|---|---|---|---|
| COLOR: | | 1 CUSTOM WHEELS | | 1 DAMAGE   5 RIGHT | | 1 DAMAGE   5 RIGHT | |
| | | 2 PAINTED INSCRIPT. | | 2 MODIFIED   6 FRONT | | 2 CUST. TINT   6 FRONT | |
| 1 BUCKET SEATS | | 3 LEVEL ALTERED | | 3 STICKER   7 REAR | | 3 CURTAINS   7 REAR | |
| 2 DAMAGED INSIDE | | 4 RUST / PRIMER | | 4 LEFT | | 4 ARRESTED | |
| | | 5 CUSTOM PAINT | | | | | |
| | | 6 VINYL TOP | | | | | |

**S-1**
SEX   DESC.   HAIR   EYES   HEIGHT   WEIGHT   AGE   CLOTHING
NAME, ADDRESS, DOB, IF KNOWN; NAME, BKG. NO. CHARGE, IF ARRESTED

PERSONAL ODDITIES (UNUSUAL FEATURES, SCARS, TATTOOS, ETC.)
Weapon (VERBAL THREATS, BODILY FORCE, SIMULATED GUN, ETC. IF KNIFE OR GUN, DESCRIBE FULLY)

**S-2**

DSD/SEU

FIREARMS STOLEN / LOST - 090 & INJ CRIME PROPERTY 77 SPVR.

**INVOLVED PERSONS**
W - WITNESS   R - PERSON RPTG   S - PERSON SECURING (459)   D - PERSON DISCOVERING (459)   P - PARENT
CP - CONTACT PERSON (DOMESTIC VIOLENCE)   TO - TRUE OWNER

| | NAME | SEX | DESC. | DOB | ADDRESS | CITY | ZIP | PHONE |
|---|---|---|---|---|---|---|---|---|
| R | PALMA, ALFREDO | M | H | 6/2/71 | R- 1023 S. CONCORD | LA | 90023 | 761/8229 |
| | DR. LIC. NO. 9838842 | FOREIGN LANGUAGE SPOKEN: SPANISH | | | B- 3112 BAGWORTH CT | SAN JOSE | 95148 | B31- |
| W | ORTIZ, CARLOS | M | H | | R- | | | 408/757/2729 |
| | | | SPANISH | | B- 3112 BAGWORTH CT | SAN JOSE 95148 | | |
| W | SANCHEZ, JAVIER | M | H | | R- | | | (559) 805/4130 |
| | | | SPANISH | | B- 3724 DOTH VANS STREET | VISALIA, CA | 93277 | |

**COMBINED EVID. RPT.**
USE THIS SECTION IN LIEU OF PROPERTY REPORT IF NO GUN AND NO MORE THAN THREE ITEMS OF EVIDENCE
LOC. EVID. BKD.   10.10 GIVEN Y N   Preliminary Drug Test   SUPV./INV. OFCR. TESTING   SER. NO.   WITNESS OFCR.   SER. NO.

| ITEM | QUAN. | ARTICLE | SERIAL NO./TYPE TEST OF DRUG | BRAND / DRUG WEIGHT UNITS | MODEL NO./DRUG TEST RESULT | MISC. |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

**NARRATIVE** 1) LIST ADD'L SUSPS. & INVOLVED PERSONS. 2) RECONSTRUCT OCCURRENCE, INCL. ALL ELEMENTS OF CORPUS DELICTI. 3) IF NOT USING EVID. CONTINUATION FORM, DESCRIBE EVIDENCE, INCLUDE PRINTS, STATE LOCATION FOUND AND BY WHOM, GIVE DISPOSITION. 4) SUMMARIZE OTHER DETAILS, INCL. WHEN & WHERE PERSONS WITH NO PHONE CAN BE LOCATED. 5) INDICATE TYPE OF TRANSLATOR NEEDED FOR ANY INVOLVED PERSON. 6) LIST ITEMS MISSING.

VICTIM INDEMNIFICATION INFORMATION (IF APPLICABLE) }

IS ANY OF THE VICTIM'S PROPERTY MARKED WITH AN OWNER APPLIED IDENTIFICATION NUMBER?
IF "YES" EXPLAIN IN NARRATIVE.   YES □   NO □

**APPROVAL AND REVIEW**
SUPERVISOR APPROVING   SERIAL NO.   DETECTIVE SUPERVISOR REVIEWING   SERIAL NO.
DATE & TIME REPRODUCED   CLERK

70-03.01.0 (4/00)

Category _____

| PAGE NO. | TYPE OF REPORT | | | BOOKING NO. | | DR NO. |
|---|---|---|---|---|---|---|
| 2/2 | GRAND THEFT (CARGO) | | | | | 060423348 |

| ITEM NO. | QUAN. | ARTICLE | SERIAL NO. | BRAND | MODEL NO. | MISC. DESCRIPTION (E.G. COLOR, SIZE, INSCRIPTIONS, CALIBER, REVOLVER, ETC.) | DOLLAR VALUE |
|---|---|---|---|---|---|---|---|

SOURCE OF ACTIVITY

ON 11/15/06 @ 0845 HOURS, ALFREDO RODRIGUEZ-
PALMA, WALKED INTO HOLLENBECK STATION AND
ALLEGED HIS TRACTOR-TRAILER WAS STOLEN. THE
TRAILER WAS LOADED WITH ELECTRONICS DESTINED TO
BEST BUY.

INVESTIGATION

OFCR GARCIA #25960 TOOK TWO VEHICLE REPORTS
I, DET RIVERA A#24218 TOOK THE INV OVER
AT 1015 HOURS.
PALMA STATED HE PKD AND SECURED THE VEHICLE
ON 11/14/06 @ 1300 HOURS. HE RETURNED ON 11/15/06
0700 HOURS AND DISCOVERED THE VEHICLES MISSING.

ARREST

NONE.

BOOKING

NONE

EVIDENCE

NONE

ADDITIONAL

I COMPLETED THE PIR AND INTERVIEWED PALMA'S
EMPLOYER - CARLOS ORTIZ. SEE FOLLOW-UP
REPORT - SAME DR - FOR FURTHER.

PROPERTY TAKEN                                    TOTAL LOSS

| 1 | 6,000 | PORTABLE DVD PLAYERS | | WSIGMA | | | $540,000.25 |

IF MORE SPACE IS REQUIRED, USE CONTINUATION SHEET, 15.09.0

# DECLARATION OF TRINA GRAMI

Trina Grami, declares as follows:

1.      I am employed by PERFORMANCE TEAM - NORTHWEST, located at 1025 Valley Avenue NW, Puyallup, Washington 98371 ("Performance") as the office supervisor.  I am also the Custodian of Records for regarding the documents pertaining to this matter. I have personal knowledge of the facts set forth in this declaration and if called as a witness could and would competently testify thereto.

2.      On or about November 1, 2006, a container consisting of 1980 cartons of electronics containing 5940 DVD players was received by Performance from ACTION ELECTRONICS CO., an overseas vendor  (hereinafter referred to as the "Goods").  The shipment was unloaded from the container and placed in our warehouse. We understood that at the time of their receipt at Performance, the Goods were to be shipped to Best Buy at 777 Monte Vista Drive, Dinuba, California 93618.

3.      Consistent with the usual practice and procedure of Performance, after receipt of the container, the Goods were inspected for water damage and crushed cartons and counted to verify the purchase order.  The Goods were then warehoused pending receipt of the Best Buy purchase order. Upon receipt of a purchase order, the goods were retrieved from their warehouse location and staged for loading on the trailer. The cartons were then shrink-wrapped, loaded onto a truck provided by Advanced Freight Network ("AFNW") and photographed after loading onto the trailer. At the time of loading, the Goods were in good order and condition.

4.      The TRAILER MANIFEST (2-pages) is attached hereto as Exhibit "1" and reflects the receipt of the goods on or about 11/1/06 from Action Electronics, along with the weight, # of cartons, etc. Page 2 reflects similar information. Performance prepares this record at or about the time to cargo is received and is a work in progress until the shipment is loaded onto the carrier's equipment. We assign a load number, record the seal #, identify the trailer number and trucker (here "6553/AFNW").

5.      It is also our practice to photograph the loads. Copies of the photographs (2) of the Goods taken after inspection, shrink-wrapping and loading, at about 2:54 p.m. on November 10, 2006, are attached hereto as Exhibit "2".

6.      Performance also prepares the bill of lading which is used to identify the shipment transported, its condition and to provide delivery instructions. A true copy of the original page of the Bill of Lading is attached hereto as Exhibit "3".

I declare under penalty of perjury under the laws of the United States of America (28 U.S.C. §1746) that the foregoing is true and correct.

Dated this 17th day of June 2008 at Puyallup, Washington.

_Trina Grami_
TRINA GRAMI

DECLARATION OF TRINA GRAMI IN SUPPORT OF PLAINTIFF ADVANTAGE FREIGHT NETWORK, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, ADJUDICATION OF ISSUES
3

EXHIBIT 1

# TRAILER MANIFEST
## Best Buy

| Receipt Date | Dock Operator | Vendor City, State, Zip | Ship Inv # | Advanced Carrier | BOL | Type | P/T |
|---|---|---|---|---|---|---|---|
| 180183 11/01/06 | 142001 PatSco | ACTION ELECTRONICS CO C Puyallup, WA 55557 | S Seattle | | MAEU5112670 | Ctns | |

| Dept | PO Number | Style | Color | GOH | Ctns | Wgt | Units | Cost | Pickup | FSC | Consol | L/H | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | NHHFWJ | 7656636 | 0006527193 | 0 | 1,980 | 12335 | 5940 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | 0 | 1980 | 12335 | 5940 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | 0 | 1980 | 12335 | 5940 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | | | | | | Grand Total | | 0.00 |

# TRAILER MANIFEST
## Best Buy

| | |
|---|---|
| Date | **11/10/06** |
| Invoice # | **N0019038** |
| Trailer/Driver | **6553/AFNW** |
| Seal # | **388035** |
| Load # | **31825** |

| Summary | Units | S/Cwt |
|---|---|---|
| Total Weight | 12335 | |
| Total Cartons | 1,980 | |
| Total GOH | 0 | |
| Total Shipments | 1 | |
| Total P/U Weight | 0 | |
| Total P/U Charges | 0.00 | 0.00 |
| P/U FSC | 0.00 | 0.00 |
| Consolidation Charges | 0.00 | 0.00 |
| Line Haul | 0.00 | 0.00 |
| Line Haul FSC | 0.00 | 0.00 |
| Manifest Charge | 0.00 | 0.00 |
| Discount | 0.00 | 0.00 |
| Total Charges | 0.00 | 0.00 |

| Department Breakdown | | | | |
|---|---|---|---|---|
| Department | Units | Weight | Total | $/CWT |
| | 1980 | 12335 | 0.00 | 0.00 |

| Internal Chargeback Summary | | | | | | |
|---|---|---|---|---|---|---|
| Department | GOH | CTN | Weight | Units | Charge | % |
| | 0 | 1980 | 12335 | 5940 | 0.00 | 0.00 |
| Internal | 0 | 1980 | 12335 | 5940 | 0.00 | 0.00 |
| Line Haul | | | | | 0.00 | |
| Line Haul FSC | | | | | 0.00 | |
| Pickup | | | | | 0.00 | |
| Pickup FSC | | | | | 0.00 | |
| Consolidation | | | | | 0.00 | |
| Charges | | | | | 0.00 | |
| Variance | | | | | 0.00 | |

EXHIBIT 2



11/10/2006 02:54 PM

# EXHIBIT 3

ORIGINAL **BOL** **Performance Team - Northwest**
1025 Valley Ave NW
Puyallup, WA 98371 **Duplicate**

INVOICE NO.
N0019038

ernste

| DATE | B/L NO. | VIA | | Ready: |
|---|---|---|---|---|
| 11/10/06 | 31825 | | ADVANTAGE FREIGHT | 11/10/06 14:00 |

| CONSIGNEE | SHIPPER |
|---|---|
| Best Buy Dinuba #725<br>777 Monte Vista Drive<br><br>DINUBA, CA 93618 | **B/L TO** Best Buy Company Inc<br>Attn: Briana Swanson<br>7601 PENN AVE SOUTH<br>RICHFIELD , MN 55423 |
| Performance Team Northwest<br>1025 Valley Ave NW<br>Puyallup, WA 98371 | INTERSTATE COMMERCE COMMISSION REGULATIONS REQUIRE ALL CHARGES TO BE PAID WITHIN 7 DAYS<br><br>NO CLAIMS PAID ON CONCEALED DAMAGES. ALL CLAIMS MUST BE MADE WITHIN 48 HOURS. |

| NO. PIECES | DESCRIPTION OF ARTICLES & SPECIAL MARKS | WEIGHT/PCS | RATE | CHARGES | |
|---|---|---|---|---|---|
| 1980 | Ctns - Department Store Merchandise<br>TRAILER# 6553   SEAL# 388035 RELEASE# 269651<br>LOAD# 31825   MANIFEST# 269651 | 12335 | 0.00 | 0.00 | |
| 1980Ctn | Tractor #            Tractor PL#<br>Empty Trailer #      Driver Lic #<br>Date        Time      Company<br>Driver's Signature | 12335 | | 0.00 | COL |

SANTA MONICA PRTG. SERV. (310) 458-3463

# DECLARATION OF RYAN DAUBE

Ryan Daube declares as follows:

1.    I am the owner and CEO of ADVANTAGE FREIGHT NETWORK, LLC ("AFN"). I have personal knowledge of the facts set forth in this declaration and if called as a witness could and would competently testify thereto.

2.    AFN is an Illinois limited liability corporation, maintains its principal place of business in Deerfield, Illinois and is registered with the Federal Motor Carrier Safety Administration ("FMCSA") as a transportation broker under Docket MC-446639. It arranges interstate motor carrier transportation for its customers. I so doing, AFN often contracts with FMCSA registered motor carriers either on a per shipment basis, or as here, for an indefinite number of shipments over a period of time.

3.    On July 22, 2005, AFN entered into a written contract with Javier Sanchez ("Sanchez"), entitled "CONTRACT CARRIER AGREEMENT" (the "Agreement"). Attached hereto as Exhibit "1" is a true copy of the Agreement.

4.    Under the terms of the Agreement, Sanchez agreed to transport shipments arranged by AFN on behalf of AFN's customers.

5.    On or about November 10, 2006, AFN, on behalf of its customer, Best Buy Inc., hired SANCHEZ to transport a shipment of 5940 Insignia portable DVD players from Performance Team Northwest at Puyallup, Washington to Best Buy, Inc. at Dinuba, California (the "Shipment").

6.    The total Shipment is valued at $540,540.00.

7.    AFN hired SANCHEZ to transport said Shipment pursuant to the Agreement.

8. At no time was AFN notified that Sanchez asked Carlos Ortiz to transport the Shipment on behalf of Sanchez.

9. At no time did AFN consent to the subcontracting of the Shipment by Sanchez to Carlos Ortiz.

10. On or about November 20, 2006, AFN timely filed a claim for the loss of the Shipment, on behalf of its customer Best Buy, in the amount of $540,540, with both Sanchez and Carlos Ortiz (the "Claim").

11. Neither SANCHEZ nor ORTIZ have paid any portion of the Claim.

12. On March 29, 2007, after receipt of payment of $540,540 from AFN, Best Buy assigned all rights and interests in the Claim to AFN. A true copy of the written assignment of the Claim to AFN is attached hereto as Exhibit "4".

13. To date, the Shipment nor any part thereof has been recovered.

I declare under penalty of perjury under the laws of the United States of America (28 U.S.C. §1746) that the foregoing is true and correct.

Dated this    day of June, 2008 at Deerfield, Illinois.

RYAN DAUBE

EXHIBIT 1



**THE BEST WAY EVERY DAY** ™

**Advantage Freight Network, LLC.**
2333 Waukegan Rd. Suite 150
Bannockburn, IL. 60015

**Phone: 847-964-5718**      **Fax: 847-964-5768**

### CONTRACT CARRIER AGREEMENT

This CONTRACT CARRIER AGREEMENT (hereinafter referred to as "the Agreement") is made and entered into this day of **7-22-2005** at Bannockburn, Illinois, by and between the following parties (hereinafter referred to as "the Parties"). Advantage Freight Network, LLC., an Illinois Limited Liability Company with its main headquarters located at 2333 Waukegan Rd., Suite #150, Bannockburn, IL, 60015, (hereinafter referred to as "AFN") and **J-Sanchez Truck** with its principal place of business located at **Visalia Ca.** (hereinafter referred to as "Carrier").

The Parties do hereby consent and decree that they have the necessary capacity and authority to enter into this Agreement which shall be governed in part by 49 U.S.C. 14101 (b) of the Interstate Commerce Act. Carrier is entering into this Agreement exclusively as a "Contract Carrier" and AFN is entering into this Agreement exclusively as a "Freight Broker." Carrier is strictly forbidden from using another Carrier or Broker to move any freight on behalf of AFN or AFN's customer. Carrier is strictly forbidden from soliciting any of AFN's customers ("back soliciting") while Carrier is doing business with AFN and for a period of one year following termination of such relationship between Carrier and AFN.

### TERMS AND CONDITIONS

AFN hereby promises to arrange for freight to be picked up and delivered by Carrier and Carrier hereby promises to transport freight on behalf of AFN or its customers, for an unspecified amount of shipments during the term of this Agreement. As consideration for this Agreement, AFN agrees to pay carrier a negotiated rate for each and every shipment that Carrier performs according to the terms of this Agreement. Such negotiated rates will be stated clearly in AFN's Rate Confirmation Sheet, which shall be considered a part of this Agreement, and shall have binding affect on both Parties. As consideration for this Agreement, Carrier agrees to pick up and deliver shipments according to the unique and special needs of AFN or its customers. Such unique and special needs will be clearly stated in AFN's Rate Confirmation Sheet, which shall be considered a part of this Agreement, and shall have binding affect on both Parties. Each shipment that Carrier executes on behalf of AFN or AFN's customer during the duration of this Agreement must be evidenced by a separate and unique Rate Confirmation Sheet signed by the Carrier. Carrier is strictly forbidden from "brokering" any load tendered to it by AFN.

Carrier acknowledges and agrees that AFN, and AFN only, shall be solely and exclusively responsible for any and all freight charges that arise out of this Agreement. Carrier hereby waives any and all rights that it may have under any statute (including both state and federal), contract, case law (common law) or treaty to collect or attempt to collect any freight charges from any party other than AFN, which arise out of this Agreement.

AFN hereby agrees to pay Carrier according to the payment terms specified in Carrier's invoice. Should Carrier request payment over the phone, Carrier will be assessed a 2% charge or $10.00 which ever is greater (based on the total negotiated rate). Should Carrier request immediate payment in the form of a check to be mailed out the same day, Carrier will be assessed a 1.5% charge (based on the total negotiated rate).

Carrier hereby acknowledges and agrees that it is at AFN's sole and exclusive discretion to withhold payment in full or any portion thereof due to Carrier, if Carrier fails to meet the terms and conditions provided herein, or if Carrier fails to strictly abide by the terms and conditions contained within the Rate Confirmation Sheet. This may include but is not limited to, missed or delayed delivery dates by Carrier, failure to ship/transport the freight as specified by AFN, or the failure to provide proof of delivery, failure to provide a clear and legible bill of lading, failure to provide receipts for any lumper or unloading fees, or failure to deliver goods in the same condition as they were received by Carrier (such as cargo loss, shortage or damage). Any claim for nonpayment or underpayment must be presented to AFN within thirty-five (35) days after discovery by Carrier of said nonpayment or underpayment. Carrier hereby waives any rights it has to payment for freight charges it has incurred arising under this Agreement, should Carrier fail to present AFN with an invoice or written request for payment within one-hundred and eighty (180) days from the date the freight was delivered for the particular shipment in question.

Carrier and Carrier's agents and/or employees shall at all times be considered independent contractors of AFN throughout the duration of this Agreement. Carrier is solely and exclusively responsible for the direction, control and supervision of its agents including its agents and/or employees. Carrier represents and warrants that it has the proper licenses, insurance, and working equipment to pick up and deliver the freight according to the terms and conditions of this Agreement or any subsequent Rate Confirmation Sheet. Carrier hereby assumes all liability for any loss or damage to any freight while such freight is in Carrier's custody or control. Carrier shall not be liable for any loss or damage to the freight caused by act of God, public enemy, authority of law, or negligence of the shipper. AFN shall supply Carrier with AFN's Cargo Claim Form for any loss or damage caused by Carrier, and such form shall exclusively govern any claims presented by AFN and shall be binding on both Parties. AFN reserves the right to offset any freight bill due and owing to Carrier by the amount of any outstanding claim(s) that AFN may have with Carrier. AFN shall notify Carrier prior to taking any such action.

This Agreement is binding on both Parties and shall supersede and negate any and all previous agreements between both Parties. The terms of this Agreement or any subsequent document prepared by AFN (such as the Rate Confirmation Sheet or the Cargo Claim Form) may not be amended unless agreed to in writing by AFN. AFN reserves the exclusive right to update and modify this Agreement at anytime, and such modifications shall be deemed accepted when signed by Carrier. The Parties agree that this Agreement shall be construed and governed exclusively under the laws of the State of Illinois, and further agree that all disputes arising under this Agreement must be submitted to the State or Federal Courts within Illinois for proper settlement. Should a court find any of the provisions contained herein unenforceable, the court may strike out those unenforceable provisions and the remaining provisions shall be kept intact.

By: _____

Authorized Agent for AFN

Date: _____

By: *Javier Sanchez*

Authorized Agent for Carrier

Date: **07-22-2005**

- 1 -

# Trade Experience Summary Report


::Email this report::

---

## Transaction #3203045

**JAVIER SANCHEZ**
**815 HEFFERNAN AVE**
**CALEXICO, CA 92231 US**
Number of companies reporting: **1**

## Report Date: 12/19/2006

## Executive Summary

<u>**0**</u>  **companies reporting Cash Only terms.**
<u>**0**</u>  **companies reporting a bad debt write-off.**



### Recent 6-month trend:

| | |
|---|---|
| % of debt reported > 30 days old: | **0%** |
| % of debt reported > 60 days old: | **0%** |
| Average Days Beyond Terms: | **0** |

| | |
|---|---|
| Average monthly balance reported: | **$65** |
| Earliest date of first sale reported: | **6/1/2006** |
| Highest debt reported: | **$65** |
| Highest credit limit reported: | |

**NO Credit Score**
Minimum requirements not available If you would like to try this request in an Extended (Industry-wide) Trade Experience Report please click **here**

## Aging Analysis by Category

## Data received so far this month:

No aging data on this company has been received so far this month.

### Average data received in the prior 36 months:

| Type | Companies Reporting | Current | 31-60 Days | 61-90 Days | 91+ Days | Balance | % Past Due |
|------|---------------------|---------|------------|------------|----------|---------|------------|
| LTL | 1 | $65 | $0 | $0 | $0 | $65 | 0% |

LTL = Less than Truckload Carriers

View a monthly aging trend analysis

View details from each reporting company:
1 LTL Carrier

---

## Licensing Info & Authorities

### Docket #MC454233

JAVIER SANCHEZ
DBA: J SANCHEZ TRUCKING
3724 S. DANS ST
VISALIA, CA US 93277
Phone: 5598054130  FAX:

| Broker | Common | Contract |
|--------|--------|----------|
| None | None | Active |

## Insurance Policies

| Type | Effective | Limit * | Policy # | Insurance Company Name |
|------|-----------|---------|----------|------------------------|
| BI&PD | 10/8/2002 | 1000 | GWP10314A | GREAT WEST CASUALTY CO.<br>1100 WEST 29TH ST., P.O. BOX 277<br>SOUTH SIOUX CITY, NE 68776<br>800-228-8602 |

***Limits are in thousands*

The information herein is furnished in confidence for your exclusive use for legitimate business purposes and shall not be copied, redistributed or otherwise reproduced. Neither eCredit Inc., nor its sources, affiliates or distributors warrant such information nor shall they be liable for your use or reliance upon it. © 2006 eCredit, Inc.

Copyright © 2006 eCredit, Inc. All rights reserved. eCredit and the eCredit logo Registered U.S. Patent and Trademark Office.

Terms & Conditions | Privacy

EXHIBIT 4



**BEST BUY** ASSIGNMENT

DATE: March 29, 2007

CLAIM NUMBER: LD000000905
AMOUNT OF CLAIM PAID: $540,540.00

In consideration of its receipt of the payment of the above-described claim as presented or compromised arising out of cargo loss, damage or delay (the "Claim") from Advantage Freight Network ("CARRIER"), Best Buy Inc ("CLAIMANT") hereby expressly grants, conveys and assigns to Advantage Freight Network all of CLAIMANT'S right, title and interest in and to the Claim and any causes of action and/or rights to recovery which CLAIMANT may have against Advantage Freight Network, Advantage Freight Network's insurance carrier, and any and all other persons or entities ("Other Responsible Persons") arising out of or relating to the cargo loss, damage or delay giving rise to the Claim. This Assignment shall include any and all of CLAIMANT'S procedural and substantive rights to pursue and collect any and all monies due arising out of or relating to the Claim, including all of CLAIMANT'S rights to file suit and to pursue every other remedy available to CLAIMANT against Advantage Freight Network's insurance carrier, and any and all Other Responsible Persons arising out of or relating to the cargo loss, damage or delay. The intent of the foregoing is that Advantage Freight Network shall stand in the position of CLAIMANT with respect to all of CLAIMANT' S rights whatsoever against Advantage Freight Network, Advantage Freight Network's insurance carrier, and any and all Other Responsible Persons arising out of or relating to the Claim.

CLAIMANT represents and warrants that it has all necessary power and lawful authority to enter into this Assignment and to assign the rights assigned herein and that this Assignment does not violate any applicable contractual obligations of CLAIMANT.

CLAIMANT represents and warrants that as of the date hereof, it has not assigned to any other party or compromised any right or action assigned to Advantage Freight Network herein nor has CLAIMANT received any amount or benefit of any kind from any third party in collection, settlement or compromise of any such assigned right or action.


CLAIMANT:

Best Buy Inc -

By: _Daren Coop_____

Signature _Daren A Coop_

Printed Name Title _Logistics Mgr - Freight Claims_