**MILES L, KAVALLER**
**A PROFESSIONAL LAW CORPORATION**
Miles L. Kavaller, Esq. - SBN 73950
Encino Law Center
15915 Ventura Boulevard, Penthouse One
Encino, CA 91436
Telephone: (818) 728-4821
Facsimile: (818) 474-7180
E-Mail: mkavaler1@earthlink.net

Attorney for Plaintiff, **Advantage Freight Network, LLC**

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA - FRESNO

| | |
|---|---|
| ADVANTAGE FREIGHT NETWORK, LLC, an Illinois limited liability corporation<br><br>    Plaintiff,<br><br>VS.<br><br>JAVIER SANCHEZ d/b/a J. SANCHEZ TRUCKING and CARLOS ORTIZ d/b/a CARLOS ORTIZ TRUCKING<br>    Defendants. | CASE NO. 1:07-CV-00827-LJO-SMS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF ADVANTAGE FREIGHT NETWORK, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Served and Filed concurrently with Notice of Motion and Motion for Partial Summary Judgment; Statement of Uncontroverted Facts and Conclusions of Law; Request for Judicial Notice; the Declarations of Trina Grami, Ryan Daube and Miles L. Kavaller; and Exhibits.<br>[Proposed] Judgment Lodged Concurrently]<br><br>**Date : 9/10/08**<br>**Time: 8:30 A.M.**<br>**Place: Courtroom 4** |

___
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF ADVANTAGE FREIGHT NETWORK, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT.
1

Plaintiff, ADVANTAGE FREIGHT NETWORK, LLC ("AFN") submits this Memorandum of Points and Authorities in Support of its Motion for Partial Summary Judgment against Defendant JAVIER SANCHEZ.

## 1. INTRODUCTION

Under 49 U.S.C. § 14706(a) commonly referred to as the Carmack Amendment, a motor carrier is liable to the person entitled to recover under the bill of lading for the actual loss it suffers.[1] By this Motion, Plaintiff ADVANTAGE FREIGHT NETWORK, LLC ("AFN") seeks partial summary judgment on its First Claim against Defendant JAVIER SANCHEZ ("Sanchez") only in the sum of $540,540, the invoice price for a shipment of DVD players which were not delivered to the consignee, Best Buy in Dinuba, California.[2]

---

[1] 49 U.S.C. §14706(a) provides as follows:
 "A carrier providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 or chapter 105 are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States or from a place in the United States to a place in an adjacent foreign country when transported under a through bill of lading and, except in the case of a freight forwarder, applies to property reconsigned or diverted under a tariff under section 13702. Failure to issue a receipt or bill of lading does not affect the liability of a carrier. A delivering carrier is deemed to be the carrier performing the line-haul transportation nearest the destination but does not include a carrier providing only a switching service at the destination."

[2] AFN here relies solely on the Answers of Sanchez and Ortiz as referenced in the accompanying Statement of Undisputed Facts as its factual basis for this motion, despite the significant differences it has with their view of what happened, particularly when the Shipment was said to have arrived at Best Buy in Dinuba. By doing so, AFN seeks to avoid reliance on any "disputed" facts which would jeopardize the success of this motion.

---
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF ADVANTAGE FREIGHT NETWORK, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT.
2

## A. The Parties and Their Relationships.

Plaintiff AFN is a transportation broker registered with the Federal Motor Carrier Safety Administration ("FMCSA") under Docket No. MC-446639 [Undisputed Fact ("UF") # 2]. As a transportation broker, it arranges for shipments on behalf of its customers [UF #3].[3]

Defendant, Sanchez is a natural person engaged in business as a motor carrier registered with the FMCSA under Docket No. MC-454233, with his principal place of business in Visalia, California [UF #4]. As a registered motor carrier, SANCHEZ is authorized to transport property in interstate commerce [UF#5].

Defendant CARLOS ORTIZ ("Ortiz"), likewise, is a natural person engaged in business as a motor carrier registered with the FMCSA under Docket No. MC-498339, with his principal place of business in Lathrop, California [UF #7]. As a registered motor carrier, Ortiz is authorized to transport property in interstate commerce [UF #8].

On July 22, 2005, AFN entered into a written contract with SANCHEZ, entitled "CONTRACT CARRIER AGREEMENT" (the "Agreement") [UF #10]. Under the terms of the Agreement, SANCHEZ agreed to transport shipments arranged by AFN on behalf of AFN's customers [UF #11].

Under the terms of the Agreement, SANCHEZ agreed that he was "strictly forbidden from using another Carrier or Broker to move any freight on behalf of

---

[3] 49 U.S.C. §13102 (2) defines "broker" as follows:
"The term 'broker' means a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation."

AFN or AFN's customer" [UF #12].

The Agreement also stipulates that "Carrier agrees to pick up and deliver shipments according to the unique and special needs of AFN or its customers. Such unique and special needs will be clearly stated in AFN's Rate Confirmation Sheet, which shall be considered part of this Agreement, and shall have binding affect on both Parties." [UF #13].

The Agreement further stipulates that "Carrier is strictly forbidden from 'brokering' any load tendered to it by AFN." [UF #14]; and further that "Carrier is solely and exclusively responsible for the direction, control and supervision of its business including its agents and/or employees." [UF #15].

Finally, it also states that "Carrier hereby assumes all liability for any loss or damage to any freight while such freight is in Carrier's custody or control." [UF #16].

**B.    The Shipment**.

On or about November 10, 2006, AFN, on behalf of its customer, Best Buy Inc., hired SANCHEZ to transport a shipment of 5940 Insignia portable DVD players from Performance Team Northwest at Puyallup, Washington to Best Buy, Inc. at Dinuba, California (the "Shipment" or "Goods") [UF# 17].

The Goods arrived at Performance Team Northwest the previous week, on or about November 1, 2006 from an overseas vendor [UF #18]. At that time, the Goods were unloaded from the container and placed in Performance's warehouse [UF #19]. Performance understood that at the time of the receipt of the Goods at Performance, they were to be shipped to Best Buy at 777 Monte Vista Drive, Dinuba, California 93618 [UF #19].

Consistent with the usual practice and procedure of Performance, after receipt of the container, the Goods were inspected for water damage and crushed

___
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF ADVANTAGE FREIGHT NETWORK, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT.
4

cartons and counted to verify the purchase order [UF# 20]. The Goods were then warehoused pending receipt of the Best Buy purchase order. [*Id*.] Upon receipt of the purchase order, the goods were retrieved from their warehouse location and staged for loading on the trailer. [*Id*.] The cartons were then shrink-wrapped, loaded onto a truck provided by AFN and photographed after loading onto the trailer. [*Id*.] At the time of loading, the Goods were in good order and condition [UF #21]. The total Shipment is valued at $540,540.00 [UF #25].

### C. Transportation of the Shipment.

AFN hired SANCHEZ to transport said Shipment pursuant to the Agreement [UF #26]. According to Defendants, on or about November 10, 2006, due to trouble with his truck, SANCHEZ asked ORTIZ to transport and deliver the Shipment on his behalf [UF #27]. SANCHEZ states in his answer to the complaint that he "subcontracted" the delivery of the Shipment to ORTIZ. ORTIZ, in his answer to the complaint, acknowledges that he "accepted to take the load" and then directed his driver, Alfredo Palma ("Palma") to pick up the Shipment for delivery to Best Buy in Dinuba. During the transit, Palma reported to ORTIZ and ORTIZ reported to SANCHEZ [UF #28]. SANCHEZ did not notify AFN that the Shipment was subcontracted by SANCHEZ to ORTIZ [UF #29]. At no time did AFN consent to the subcontracting of the Shipment by SANCHEZ to ORTIZ [UF #30].

On November 10, 2006, Palma, picked up the Shipment from Performance at Puyallup, Washington [UF #31]. The defendants assert that Palma arrived at Best Buy's Distribution Center in Dinuba, California with the Shipment on November 13, 2006. The defendants further assert that Palma was told that Best Buy could not accept delivery of the Shipment until November 15, 2006 at 15:30 hours. The defendants claim that Palma was not permitted by Best Buy to park his

truck on Best Buy's premises. [UF #32.]

According to SANCHEZ, he sought to obtain further instructions from AFN's Iturralde and left a message for Iturralde "explaining the situation and the risk involved." SANCHEZ claims that Mr. Iturralde did not return his call and therefore he was unable to provide Palma with any further instructions.[UF #33.] According to ORTIZ, he advised Palma to "park outside of the company and wait until recipient unloaded him."[UF #32.] [4]

Instead of returning to Best Buy to deliver the Shipment on November 15, 2006, on November 14, Palma drove the trailer with the Shipment to Los Angeles, California since the truck was his only means of transportation [UF #34].

During the late evening hours of November 14, 2006 or early morning of November 15, 2006, while the tractor and trailer possessing the Shipment was in Los Angeles, California, said trailer, including all of the contents of the Shipment was stolen [UF #35, #36].[5]

### D. Assignment of the Claim

On or about November 20, 2006, AFN timely filed a claim for the loss of the Shipment, on behalf of its customer Best Buy, in the amount of $540,540, with both SANCHEZ and ORITZ (the "Claim") [UF #37]. Neither SANCHEZ nor ORTIZ have paid any portion of the Claim to date [UF #38].

---

[4] AFN has no record of Palma's arrival at Best Buy's facilities, its instructions to him to return on November 15 at 15:30 hours or the telephone calls to Anthony Iturralde, or any other events claimed to have occurred at the Best Buy facility on November 13, 2006. However, for the purposes of this motion only, AFN does not dispute these "facts".

[5] While this fact is not in dispute, a copy of the Preliminary Investigation Report of the Los Angeles Police Department reflecting the reporting of the stolen cargo is attached to the Declaration of Miles L. Kavaller. At the time of the filing of this Motion, a certified copy of the Police Report had been requested and will be provided to the Court and Opposing Counsel when it is received.

---

On March 29, 2007, after receipt of payment of $540,540.00 from AFN, Best Buy executed a written assignment of this claim to AFN [UF #39].

## 2. STANDARD OF REVIEW

Summary Judgment shall be granted if the "pleadings, depositions, answer to interrogatories, and admissions of file, together with the affidavits, if any, show that there is not genuine issue as to any material fact and that the moving party in entitled to a judgment as a matter of law" F.R.C.P. 56 (c); *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986).[6]

Once the moving party has met its burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000) ("Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify facts which show a genuine issue for trial."). In doing so, "[t]he non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial." *Federal Insurance Co. v. Burlington Northern and Santa Fe Railway Co.*, 270 F. Supp.2d 1183, 1185 (C.D. Cal. 2003) (citing *Celotex*, 477 U.S. at 322, and *Anderson*, 477 U.S. at 252).

A Court may also grant summary adjudication as to specific issues within a cause of action. *First National Insurance Co. v. F.D.I.C.*, 977 F. Supp. 1051, 1055 (S.D. Cal. 1997). "[I]f a motion for summary judgment will not dispose of the whole case, the Court 'shall if practicable ascertain what material facts exist

---

[6]AFN re-asserts that for the purposes of this Motion, it is here relying on the statements made by defendants Sanchez and Ortiz in their Answers and is not offering evidence which would otherwise "dispute" some of their assertions. AFN reserves the right to do so in future proceedings. AFN contends that the evidence introduced by the defendants alone establishes the liability of Sanchez for the loss.

without substantial controversy and what material facts are actually and in good faith controverted,'" *Id.* (quoting F.R.C.P. 56(d)); see also L.R. 56-260(f) (authorizing a party to move for an "order specifying material facts that appear without substantial controversy pursuant to F.R.C.P. 56(d)"). This procedure is intended to "avoid a useless trial of facts and issues over which there was really never any controversy and which would tend to confuse and complicate a lawsuit." *Peliculas Y Videos Internacionales, S.A. de CV. V. Harriscope of Los Angeles, Inc.*, 302 F. Supp. 2d 1131, 1133 (C.D. Cal. 2004).

### 3. DISCUSSION

Plaintiff AFN filed suit against Defendants Ortiz and Sanchez alleging two claims for damages resulting from the loss of the Shipment: Statutory Liability under the Carmack Amendment codified at 49 U.S.C. § 14706(a) against both Defendants, and Breach of Contract (the Contract Carrier Agreement) against Defendant Sanchez.

### A. The Carmack Amendment and Its Elements.

AFN's action arises under federal law and its remedies are established by 49 U.S.C. § 14706(a), the "Carmack Amendment". The Supreme Court has repeatedly emphasized the broad scope of the Carmack Amendment. In *Adams Express Co. v. Croninger*, 226 U.S. 491 (1913), the Court described the effect of the Amendment on existing state laws as follows:

> "That the [Carmack Amendment] supersedes all the regulations and policies
> of a particular state upon the same subject results from its general character.
> It embraces the subject of the liability of a carrier under a bill of lading
> which he must issue and limits his power to exempt himself by a rule,
> regulation or contract. Almost every detail of the subject is covered
> completely that there can be no rational doubt but that Congress intended to

>take possession of the subject and supersede all state regulation with reference to it."

*Id.* at 505-506. *See also Missouri Pacific Railroad Co. v. Elmore & Stahl*, 377 U.S. 134, 137-138 (1964), *rehearing denied*, 377 U.S. 948 (1964) ("... liability of carrier for damage to an interstate shipment is a matter of federal law controlled by federal statutes and decisions.")

The Carmack Amendment is essentially a strict liability statute under which the claimant (i.e., AFN) must prove: (1) good condition of the shipment at the point of origin; (2) a loss or damaged condition at destination; and (3) the amount of its damages. Once the claimant establishes these elements, the burden of proof shifts to the carrier and remains on the carrier. The carrier then has the affirmative burden of proving that: (1) the damages were caused by one of the five common law exceptions; and (2) that it was free of negligence; otherwise, the carrier will be held liable for damages occurring to a shipment entrusted to its care. *Missouri Pacific Railroad Co. v. Elmore & Stahl*, *supra*.

The Supreme Court has made it clear that the Interstate Commerce Act does not require a claimant, such as AFN, to prove the carrier was negligent. On the contrary, a claimant may establish carrier liability without proving fault, except where the carrier proves that the loss or damage was caused by one of the specific common law exceptions and that the carrier, itself, was free from negligence.

Moreover, failure to issue a receipt or bill of lading does not affect the liability of the carrier. 49 U.S.C. § 14706(a)(1). And liability under the Carmack Amendment extends beyond the carrier who actually provides the transportation; it extends to any carrier "providing transportation or service." *Id.*

///
///

## B. The Undisputed Facts Establish A Prima Facie Case Under the Carmack Amendment.

On November 10, 2006, the Shipment was picked up in good order and condition from Performance Team Northwest at Puyallup, Washington.[7] The cargo was not delivered to Best Buy in Dinuba, California. The invoice price of the Shipment, $540,540.00, was paid by AFN to Best Buy in exchange for a full Assignment of the Claim. Accordingly, this was an interstate shipment subject to the Carmack Amendment, 49 U.S.C. §14706(a)(1) and AFN has satisfied the elements of its *prima facie* case against Sanchez. *See Elmore & Stahl, supra.*

A fundamental principle of the Carmack Amendment is the imposition of liability on the "initial carrier [which] is made liable to the lawful holder thereof [the bill of lading] for any loss, damage, or injury to such property caused by it"; and is also "liable for any loss, damage, or injury to such property caused by any common carrier, railroad, or transportation company to which such property may be delivered, or over whose line or lines such property may pass." *Adams Express Co. v. Croninger*, *supra* at 504. This is also consistent with the Contract Carrier Agreement between SANCHEZ and AFN, which states that SANCHEZ is responsible for the conduct of its agents, as well as for any damage or loss of freight while in his custody or control. (See UF#s 15 and 16). Accordingly, the fact that AFN did not contract directly with ORTIZ for the transportation of the Shipment does not absolve SANCHEZ from liability under the statute. *See Land O' Lakes, Inc. v. Superior Service Transportation of Wisconsin, Inc.*, 500

---

[7] Direct evidence is not required to satisfy the good condition requirement under the Carmack Amendment, but, rather, shipper can prove prima facie case with circumstantial evidence that goods were given to carrier in good condition. *Fuente Cigar, Ltd. v. Roadway Exp., Inc.* 961 F.2d 1558, 1560 (5th Cir. 1992). The undisputed facts indicate that the Goods at issue herein were duly inspected and wrapped in good condition at the time of loading at Performance. See Grami Declaration ¶¶3-7, inclusive.

F.Supp.2d 1150 (E.D. Wis. 2007) (liability under the Carmack Amendment extends beyond the carrier who actually provides the transportation; it extends to any carrier "providing transportation or service.") Indeed, the Carmack Amendment was enacted to relieve shippers of the burden of searching for a particular negligent carrier from among often numerous carriers handling interstate shipment of goods. *Eddie Bauer, Inc. v. Focus Transportation Services*, 881 F.Supp. 1174, 1178 (N.D. Ill.1995).

Liability for the loss of the freight under these facts is clear: Until delivery of the Shipment is actually made, liability for the loss of the goods will remain upon the carrier. *Eddie Bauer, Inc.* at 1178 ("A carrier's liability for the loss of goods shipped through interstate commerce extinguishes upon delivery.") This is even so when the goods never reach their intended final destination. *Spray-Tek, Inc. v. Robbins Motor Transp., Inc.* 426 F.Supp.2d 875 (W.D. Wis. 2006).

Accordingly, SANCHEZ, as a carrier, is liable for the loss of the freight at issue herein.

**C. As a Motor Carrier, Sanchez Has a Duty to Deliver.**

The federal Bills of Lading Act, which is codified in 49 U.S.C. § 80101, *et seq*. is applicable here. More specifically, under section 80110, a carrier has a duty to complete delivery. 49 U.S.C. § 80110.[8]

---

[8] 49 U.S.C. § 80110 in pertinent part is as follows:
" (a) General Rules. - Except to the extent a common carrier establishes an excuse provided by law, the carrier must deliver goods covered by a bill of lading on demand of the consignee named in a nonnegotiable bill or the holder of a negotiable bill for the goods when the consignee or holder -
 (1) offers in good faith to satisfy the lien of the carrier on the goods;
(2) has possession of the bill and, if a negotiable bill, offers to indorse and give the bill to the carrier; and

Clearly, SANCHEZ, as the carrier under contract with AFN, had a duty to deliver the Shipment to Best Buy. According to the Defendants, the carrier arrived at Best Buy's facility on November 13, 2006 to deliver the Shipment. The carrier was advised to return on November 15 at 15:30. Neither SANCHEZ nor his agent or subcontractor, ORTIZ, returned with the Shipment on November 15, 2006.

Of significance are Best Buy's instructions to Palma to return on November 15, 2006 at 15:30 to make the delivery of the Shipment. ***Despite these instructions, delivery was not made.*** The import of these undisputed facts is that there was no delivery. If there is no delivery, then SANCHEZ, by virtue of the failure of his agent or subcontractor, has not satisfied the statutory obligation under 49 U.S.C. §80110 and is strictly liable as a carrier under Carmack for the actual loss.

**D. The Defendant Cannot Establish Any Exceptions to Liability.**

Upon the showing of a *prima facie* claim under the Carmack, the burden shifts to the carrier to prove that the damages or loss was caused by one of the common law exceptions and that it was free of negligence. *Elmore & Stahl,*

---

(3) agrees to sign, on delivery of the goods, a receipt for delivery if requested by the carrier.
(b) Persons to Whom Goods May Be Delivered. - Subject to section 80111 of this title, a common carrier may deliver the goods covered by a bill of lading to -
 (1) a person entitled to their possession;
 (2) the consignee named in a nonnegotiable bill; or
 (3) a person in possession of a negotiable bill if -
(A) the goods are deliverable to the order of that person; or
(B) the bill has been indorsed to that person or in blank by the consignee or another indorsee."

_____
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF ADVANTAGE FREIGHT NETWORK, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT.
12

*supra.* Notwithstanding the shifting of the burden, it is readily acknowledged that these exceptions, to-wit: (a) act of God (b) the public enemy (c) the act of the shipper himself (d) public authority, or (e) the inherent vice or nature of the goods, are inapplicable to the facts herein.

SANCHEZ may argue that his status for the Shipment changed from that of a "motor carrier" to a "warehouseman," because Best Buy was unable to accept delivery of the shipment on November 13 and AFN was allegedly non-responsive to his inquiries for further instructions.[9] The anticipated argument is that the Carmack strict liability standard for motor carriers was downgraded to negligence, the standard for liability of a warehouseman under state law.

The import of this argument is questionable for three reasons: First, it ignores the fact that there was no proper tender of delivery. Palma was advised to return on November 15 but did not do so. As such, there can be no conversion of the carrier's liability to that of a warehouseman.[10] *Keystone Motor Freight Lines, Inc. v. Brannon-Signaigo Cigar Co.*, 115 F.2d 736 (5th Cir. 1940)(Carrier's attempted delivery to closed facility does not constitute a tender sufficient to change the carrier's status to that of a warehouseman). [11]

Second, even if the standard of care is that of a warehouseman, a contention

---

[9] As noted earlier, AFN has no record of any telephone contacts from Sanchez but is not disputing this "fact" for the purpose of this motion.

[10] See for example, *General Am. Transp. Corp. v. Indiana Harbor Belt R. Co.,* 191 F.2d 865 (7th Cir. 1951)*, cert. denied,* 343 U.S. 905 (1952); *Resort Graphics, Inc. v. Rio Grande Motor Way, Inc.*, 707 P.2d 1011, 1014 (Colo. Ct. App. 1985), *reversed on other grounds sub nom*, *Rio Grande Motor Way, Inc. v. Resort Graphics, Inc.*, 740 P.2d 517 (Colo. 1987). (Holding that federal, not state law applies to post-delivery activities of carrier under the bill of lading.)

[11] Even if the service provided by SANCHEZ/ORTIZ post attempted delivery could be characterized as "storage", that is part of the transportation service under the bill of lading. See 49 U.S.C. §13102(23)(B) defining the term "transportation" to include "services related to that movement, including ... storage."

with which AFN would take issue, the negligence of SANCHEZ is manifest.

Third, federal, not state law is applicable.[12]

Moreover, SANCHEZ has the burden of establishing freedom from negligence. *Leather's Best, Inc. v. S/S Mormaclynx*, 451 F.2d 800, 813 (2nd Cir. 1971)[13]. And given the facts it is highly unlikely freedom from negligence can be established.[14] Palma took no measures *viz.*: park his truck and store the Goods in a secured facility, to ensure the safety of the Goods at all. Thus, defendants will be hard-pressed to disprove their negligent conduct in handling this shipment.

///

///

///

---

[12] The duty of a warehouseman is based on a negligence standard of care and the burden of establishing negligence or freedom therefrom is governed by state law. *Whitcombe v. Stevedoring Serv. of America*, 2 F.3d 312 (9th Cir. 1993). But this is an interstate shipment subject to the Carmack Amendment which preempts state law. *Southern Railway Co. v. Prescott*, 240 U.S. 632 (1915). See also, *Rio Grande Motor Way, Inc. v. Resort Graphics, Inc.*, *supra*

[13] Compare *Minimet, Inc. v. M/V Mormacdraco*, 536 F.Supp. 769, 771 (S.D.N.Y. 1982). There a container was discharged by the ocean carrier at a Brooklyn, N.Y. terminal by the stevedore. The carrier's security guard was kidnapped and the container was stolen. Plaintiff, purchaser and consignee, sued the carrier and the stevedore. The court found Plaintiff had made its *prima facie* case by proof the carrier failed to redeliver at the designated time. The carrier met its burden of production under federal law by showing the loss was due to theft and not the result of the carrier's negligence. The stevedore's liability was determined under New York state law which required the Plaintiff to prove negligence and Plaintiff could not meet its burden to do so.

[14] Any analysis concerning the actions of SANCHEZ/ORTIZ must be focused on what the driver did after Best Buy advised him that it could not accept delivery on November 13 and to return on November 15 at 15:30 hours. Even if SANCHEZ was unsuccessful in obtaining further instructions from AFN, ORTIZ claims he advised his driver - Palma - to remain parked outside the facility until he could unload the Goods. Notwithstanding ORTIZ's instructions, Palma left Dinuba and went to his home in Los Angeles, over 200 miles away and parked his equipment on the street where, according to the police report, his truck and the Goods were stolen.

**4. CONCLUSION**

For the foregoing reasons, it is respectfully requested that the Court grant this Motion for Partial Summary Judgment.

Dated: July 9, 2008                    Respectfully submitted,

**MILES L. KAVALLER**
**A PROFESSIONAL LAW CORP.**

By:_____
    Miles L. Kavaller, Esq.
    Attorney for Plaintiff,
    Advantage Freight Network, LLC.