**MILES L, KAVALLER**
**A PROFESSIONAL LAW CORPORATION**
Miles L. Kavaller, Esq. - SBN 73950
Encino Law Center
15915 Ventura Boulevard, Penthouse One
Encino, CA 91436
Telephone: (818) 728-4821
Facsimile: (818) 474-7180
E-Mail: mkavaler1@earthlink.net

Attorney for Plaintiff, **Advantage Freight Network, LLC**

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA - FRESNO

| | |
|---|---|
| ADVANTAGE FREIGHT NETWORK, LLC, an Illinois limited liability corporation<br><br>　　　　　　Plaintiff,<br><br>VS.<br><br>JAVIER SANCHEZ d/b/a J. SANCHEZ TRUCKING and CARLOS ORTIZ d/b/a CARLOS ORTIZ TRUCKING<br>　　　　　　Defendants. | CASE NO. 1:07-CV-00827-LJO-SMS<br><br>**STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PLAINTIFF ADVANTAGE FREIGHT NETWORK, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[L.R. 56-260(a)]<br><br>[Served and Filed concurrently with Notice of Motion and Motion for Summary Judgment; Memorandum of Points and Authorities; Declarations of Miles L. Kavaller, Trina Grami and Ryan Daube and Exhibits In Support Thereof]<br><br>[Proposed] Order Lodged Concurrently<br><br>**Date : 9/10/08**<br>**Time: 8:30 A.M.**<br>**Place: Courtroom 4** |

Plaintiff, ADVANTAGE FREIGHT NETWORK, LLC ("AFN"), Pursuant to Rule 56, F.R.Civ. P. and L.R. 56-260(a), hereby submits this Statement of Undisputed Facts and Conclusions of Law in support of its Motion for Partial Summary Judgment.

| **Undisputed Facts** | **Supporting Evidence** |
|---|---|
| 1. At all times mentioned, AFN was and is a limited liability corporation organized and existing under and by virtue of the laws of the State of Illinois with its principal place of business in Deerfield, Illinois. | Plaintiff's Complaint ("Complaint"), ¶ 4; First Amended Answer of Defendant Javier Sanchez dba Sanchez Trucking to Complaint ("Amended Answer") ¶ 4; Declaration of Ryan Daube ("Daube Decl.") ¶ 2. |
| 2. Advantage Freight Network, LLC ("AFN") is a transportation broker registered with the Federal Motor Carrier Safety Administration ("FMCSA") under Docket No. MC-446639. | Complaint ¶ 4; Daube Decl. ¶2; Amended Answer ¶ 4. |
| 3. AFN, as a transportation broker, arranges for shipments on behalf of its customers. | Daube Decl. ¶ 2. |

| | |
|---|---|
| 4. At all times mentioned, defendant Javier Sanchez ("SANCHEZ") was and is a natural person engaged in business as a motor carrier registered with the FMCSA under Docket No. MC-454233, with his principal place of business in Visalia, California. | Complaint ¶ 5; Amended Answer ¶ 5. |
| 5. As a motor carrier registered with the FMCSA, SANCHEZ is authorized to transport property in interstate commerce. | Complaint ¶ 5; Amended Answer ¶ 5. |
| 6. At all times mentioned, SANCHEZ was and is a citizen of the State of California. | Complaint ¶ 5; Amended Answer ¶ 5. |
| 7. At all times mentioned, defendant Carlos Ortiz ("ORTIZ") was and is a natural person engaged in business as a motor carrier registered with the FMCSA under Docket No. MC-498339, with his principal place of business in Lathrop, California. | Complaint ¶ 6; Amended Answer ¶ 6. |

STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PLAINTIFF ADVANTAGE FREIGHT NETWORK, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT

3

| | |
|---|---|
| 8. As a motor carrier registered with the FMCSA, ORTIZ is authorized to transport property in interstate commerce. | Complaint ¶ 6; Amended Answer ¶ 6. |
| 9. At all times mentioned, ORTIZ was and is a citizen of the State of California. | Complaint ¶ 6; Amended Answer ¶ 6; |
| 10. On or about July 22, 2005, AFN entered into a written contract with SANCHEZ, entitled "CONTRACT CARRIER AGREEMENT" (the "Agreement"). | Complaint ¶ 7; Amended Answer ¶ 7; Daube Decl. ¶ 3 and Exhibit "1" thereto (hereafter "Contract Carrier Agreement"). |
| 11. Under the terms of the Agreement, SANCHEZ agreed to transport shipments arranged by AFN on behalf of AFN's customers. | Complaint ¶ 7; Amended Answer ¶ 7; Daube Decl. ¶ 4 and Exhibit "1" thereto. |

STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PLAINTIFF ADVANTAGE FREIGHT NETWORK, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT

4

| | |
|---|---|
| 12. Under the terms of the Agreement, SANCHEZ agreed that he was "strictly forbidden from using another Carrier or Broker to move any freight on behalf of AFN or AFN's customer." | Complaint ¶¶ 8, 26; Amended Answer ¶¶ 8, 26.; Daube Decl. Exhibit "1" |
| 13. The Agreement also stipulates that "Carrier agrees to pick up and deliver shipments according to the unique and special needs of AFN or its customers. Such unique and special needs will be clearly stated in AFN's Rate Confirmation Sheet, which shall be considered part of this Agreement, and shall have binding affect on both Parties." | Contract Carrier Agreement ¶3, 4th and 5th sentences. Daube Decl. Exhibit "1". |
| 14. The Agreement further stipulates that "Carrier is strictly forbidden from 'brokering' any load tendered to it by AFN." | Contract Carrier Agreement ¶3, final sentence. Daube Decl. Exhibit "1". |

STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PLAINTIFF ADVANTAGE FREIGHT NETWORK, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT

5

| | |
|---|---|
| 15. The Agreement further stipulates that "Carrier is solely and exclusively responsible for the direction, control and supervision of its business including its agents and/or employees." | Contract Carrier Agreement ¶ 7, second sentence. Daube Decl. Exhibit "1". |
| 16. The Agreement further stipulates that "Carrier hereby assumes all liability for any loss or damage to any freight while such freight is in Carrier's custody or control." | Contract Carrier Agreement ¶ 7, 4th sentence. Daube Decl. Exhibit "1". |
| 17. On or about November 10, 2006, AFN, on behalf of its customer, Best Buy Inc., hired SANCHEZ to transport a shipment consisting of 5940 Insignia portable DVD players from Performance Team Northwest at Puyallup, Washington to Best Buy Co, Inc. at Dinuba, California (the "Shipment"). | Complaint ¶¶ 9, 10; Amended Answer ¶¶ 9, 10; Daube Decl. ¶ 5; Declaration of Trina Grami ("Grami Decl.") ¶¶ 1-6, inclusive, and Exhibits "1", "2" and "3" thereto. |

STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PLAINTIFF ADVANTAGE FREIGHT NETWORK, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT

6

| | |
|---|---|
| 18. On or about November 1, 2006, a container consisting of 1980 cartons of electronics containing 5940 DVD players was received by PERFORMANCE TEAM - NORTHWEST, located at 1025 Valley Avenue NW, Puyallup, Washington 98371 ("Performance") from ACTION ELECTRONICS CO., an overseas vendor (hereinafter referred to as the "Goods"). | Grami Decl. ¶ 2. |
| 19. The Goods were unloaded from the container and placed in Performance's warehouse. Performance understood that at the time of the receipt of the Goods at Performance, they were to be shipped to Best Buy at 777 Monte Vista Drive, Dinuba, California 93618. | Grami Decl. ¶ 2. |

STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PLAINTIFF ADVANTAGE FREIGHT NETWORK, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT

7

| | |
|---|---|
| 20. Consistent with the usual practice and procedure of Performance, after receipt of the container, the Goods were inspected for water damage and crushed cartons and counted to verify the purchase order. The Goods were then warehoused pending receipt of the Best Buy purchase order. Upon receipt of a purchase order, the goods were retrieved from their warehouse location and staged for loading on the trailer. The cartons were then shrink-wrapped, loaded onto a truck provided by Advantage Freight Network ("AFNW") and photographed after loading onto the trailer. | Declaration of Trina Grami, ¶ 3. |
| 21. At the time of loading, the Goods were in good order and condition. | Grami Decl. ¶ 3. |

STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PLAINTIFF ADVANTAGE FREIGHT NETWORK, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT

8

| | |
|---|---|
| 22. Performance's receipt of the Goods on or about 11/1/06 from Action Electronics, along with the weight, # of cartons, and related information is reflected on the TRAILER MANIFEST (2-pages, attached as Exhibit "1" to Grami Declaration), that is prepared by Performance at or about the time the subject cargo/Goods are received, and is a work in progress until the shipment is loaded onto the carrier's equipment. Performance assigns a load number, records the seal #, and identifies the trailer number and trucker (here "6553/AFNW"). | Declaration of Trina Grami, ¶ 4 and Exhibit "1" thereto. |
| 23. It is Performance's business practice to photograph the loads. Copies of the photographs (2) of the Goods taken after inspection, shrink-wrapping and loading, at about 2:54 p.m. on November 10, 2006, are reflected at Exhibit "2" to the Grami Declaration, incorporated herein by this reference. | Grami Decl. ¶ 5 and Exhibit "2" thereto. |

| | |
|---|---|
| 24. Performance also prepares the bill of lading which is used to identify the shipment transported, its condition and to provide delivery instructions. A true copy of the original page of the Bill of Lading relating to the Goods is attached at Exhibit "3" to the Grami Declaration and incorporated herein by this reference. | Grami Decl. ¶ 6 and Exhibit "3" thereto. |
| 25. The total Shipment is valued at $540,540.00. | Daube Decl. ¶¶ 6, 13, 15 and Exhibit "4" thereto (Assignment of Claim). |
| 26. AFN hired SANCHEZ to transport the Shipment pursuant to the Agreement. | Daube Decl. ¶¶ 7, 8 and Exhibit "2" thereto (Initial Rate Confirmation); Original Answer to Complaint of Defendant Javier Sanchez ("Original Sanchez Answer"), ¶ 1 (page 1), filed on 7/26/2007 (a copy of which is attached as Exhibit "1" to the Declaration of Miles L. Kavaller, served and filed herewith).[1] |

---

[1] Although defendant Javier Sanchez subsequently filed an Amended Answer, the factual statements made in his original Answer are nonetheless *evidentiary admissions* properly before the Court to resolve factual issues. *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983).

---

| | |
|---|---|
| 27. According to Defendants, on or about November 10, 2006, SANCHEZ, due to trouble with his truck, asked Ortiz to transport and deliver the Shipment on his behalf. | Original Sanchez Answer, ¶ 2 (page 1); Original Answer to Complaint of Ortiz ("Ortiz Answer") ¶ 1 (page 1), filed 11/30/2007 (a copy of the Ortiz Answer is attached as Exhibit "2" to the Declaration of Miles L. Kavaller). |
| 28. According to SANCHEZ, he "subcontracted" delivery of the Shipment to ORTIZ. Advising ORTIZ that his truck had broken down and he was unable to transport the Shipment, SANCHEZ contacted ORTIZ and offered him this load. ORTIZ "accepted to take the load" and then directed his driver, Alfredo Palma to pick up the Shipment from Performance for delivery in Dinuba. During the transit, Palma reported to ORTIZ and ORTIZ reported to SANCHEZ | Original Sanchez Answer ¶¶ 2, 3. second sentence (page 1); Ortiz Answer ¶¶ 1,2. |

| | |
|---|---|
| 29. SANCHEZ did not notify AFN that SANCHEZ had asked ORTIZ to transport the Shipment on behalf of SANCHEZ. | Daube Decl. ¶ 11. |
| 30. At no time did AFN consent to the subcontracting of the Shipment by SANCHEZ to ORTIZ. | Daube Decl. ¶ 12. |
| 31. According to Defendants, on November 10, 2006, Mr. Alfredo Palma, a driver for ORTIZ, picked up the Shipment from Performance at Puyallup, Washington. | Original Sanchez Answer ¶ 2 (page 1); Ortiz Answer ¶¶ 1, 2 (page1). |

STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PLAINTIFF ADVANTAGE FREIGHT NETWORK, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT

12

| | |
|---|---|
| 32. According to Defendants, on November 13, 2006, Mr. Palma tried to deliver the Shipment at Best Buy's Distribution Center in Dinuba, California. However, receipt of the Shipment was declined by Best Buy at that time and Palma was told by Best Buy to return on November 15, 2006 at 15:30 hours to deliver the Shipment. Best Buy refused to permit Palma to park the truck at its facilities. | Original Sanchez Answer ¶¶ 2, 3 (pages 1-2);<br>Ortiz Answer ¶¶ 1, 2 (page 1); |

STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PLAINTIFF ADVANTAGE FREIGHT NETWORK, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT

13

| | |
|---|---|
| 33. According to Defendants, on 11/13/06 after Best Buy refused delivery and advised Palma to return on 11/15/06 at 15:30 hours, SANCHEZ sought to obtain further instructions from AFN's Iturralde and left a message for Iturralde "..explaining the situation and the risk involved... ." AFN called SANCHEZ and advised that Iturralde was busy with other matters and would return the call when he had a chance. In the meantime, Palma remained parked on the street, outside of Best Buy awaiting further instructions. | Original Sanchez Answer ¶¶ 3, 4 (pages 1-2); Ortiz Answer ¶ 2 (page 1). |
| 34. According to SANCHEZ, on November 14, 2006, Palma drove home to Los Angeles, California with the Shipment since the truck was his only means of transportation. | Original Sanchez Answer ¶4. |

STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PLAINTIFF ADVANTAGE FREIGHT NETWORK, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT

14

| | |
|---|---|
| 35. According to Defendants, during the late evening hours of November 14, 2006 or early morning of November 15, 2006, Palma's truck along with the Shipment was stolen from the trailer. | Original Sanchez Answer ¶ 4 (page 2); Ortiz Answer ¶ 3 (page 1). Preliminary Police Report, Exhibit "1" to the Declaration of Miles L. Kavaller ("Police Report"). |
| 36. According to the Preliminary Investigation report based on the statements given by Palma to the LAPD on 11/15/06 at 0845 hours, Palma had secured the vehicle at 1300 hours and when he returned on 11/14/06 at 0700 hours the vehicle was missing. The report also states that the value of the "16000 portable DVD players" is $540,000. | Preliminary Police Report, Exhibit "1" to the Declaration of Miles L. Kavaller ("Police Report"). |
| 37. On or about November 20, 2006, AFN timely filed a claim for the loss of the Shipment, on behalf of its customer Best Buy, for $540,540, with both SANCHEZ and ORTIZ (the "Claim"). | Daube Decl. ¶ 13. |
| 38. Neither SANCHEZ nor ORTIZ have paid any portion of the Claim to date. | Daube Decl. ¶ 14. |

STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PLAINTIFF ADVANTAGE FREIGHT NETWORK, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT

15

| | |
|---|---|
| 39. On March 29, 2007, after receipt of payment of $540,540.00 from AFN, Best Buy assigned all rights and interests in the Claim to AFN. A written assignment of this claim was issued by Best Buy. | Daube Decl. ¶ 15 and Exhibit "4" thereto (Assignment of Claim). |
| 40. To date, the Shipment nor any part thereof has been recovered. | Daube Decl. ¶ 16. |

## Conclusions of Law

1. Under 49 U.S.C. § 14706(a) commonly referred to as the Carmack Amendment, a motor carrier is liable to the person entitled to recover under the bill of lading for the actual loss it suffers.

2. Plaintiff ADVANTAGE FREIGHT NETWORK, LLC ("AFN") seeks partial summary judgment on its First Claim in the sum of $540,540, the invoice price for a shipment of DVD players which were not delivered to the consignee, Best Buy in Dinuba by Defendant JAVIER SANCHEZ ("Sanchez").

3. Sanchez, as the motor carrier which agreed to transport the shipment for AFN sub-contracted the services to Ortiz who in turn, acted as the agent of Sanchez.

4. Sanchez had a duty to deliver the shipment to its destination and failed to do so.

5. Plaintiff has established a *prima facie* case under *Missouri Pacific Railroad Co. v. Elmore & Stahl*, 377 U.S. 134, 137-138 (1964), *rehearing denied*, 377 U.S. 948 (1964). It has established that the cargo consisting of 5940 Insignia

portable DVD players was picked up by Ortiz acting as Sanchez's agent on November 10, 2006 in good condition and not delivered to the consignee. The invoice price paid by Best Buy for this cargo was $540,540, a sum paid by AFN to Best Buy in exchange for a written assignment of its cargo claim.

6.  Defendant Sanchez has the burden to establish a lawful excuse for its failure to deliver the cargo under the Carmack Amendment and the federal Bills of Lading (Pomerene ) Act. 49 U.S.C. §80100, *et seq*., here, §80110 and that he was free of negligence. Palma attempted to deliver the shipment to Best Buy on November 13, 2006. According to Ortiz, Best Buy refused to accept the shipment at that time and told Palma to deliver the cargo on November 15, 2006 at 15:30. The attempted delivery did not constitute delivery and Sanchez's obligation to deliver the cargo remained to be satisfied. See for example, *Keystone Motor Freight Lines, Inc. v. Brannon-Signaigo Cigar Co.*, 115 F.2d 736 (5th Cir. 1940)(Carrier's attempted delivery to closed facility does not constitute a tender sufficient to change the carrier's status to that of a warehouseman).[2]

According to SANCHEZ, on November 13, 2006 after Best Buy refused delivery and advised Palma to return on November 15, 2006 at 15:30 hours, SANCHEZ sought to obtain further instructions from AFN's Iturralde and left a message for Iturralde "..explaining the situation and the risk involved... ."

---

[2] Compare *Minimet , Inc. v. M/V Mormacdraco*, 536 F.Supp. 769, 771 (S.D.N.Y. 1982). A container was discharged by the ocean carrier at a Brooklyn, N.Y. terminal by the stevedore. The carrier's security guard was kidnapped and the container was stolen. Plaintiff, purchaser and consignee, sued the carrier and the stevedore. The court found Plaintiff had made its *prima facie* case by proof the carrier failed to redeliver at the designated time. The carrier met its burden of production under federal law by showing the loss was due to theft and not the result of the carrier's negligence. The stevedore's liability was determined under New York state law which required the Plaintiff to prove negligence and Plaintiff could not meet its burden to do so.

According to SANCHEZ, AFN called SANCHEZ and advised that Iturralde was busy with other matters and would return the call when he had a chance. In the meantime, Palma remained parked on the street, outside of Best Buy awaiting further instructions. Palma did not wait for, nor did he receive further instructions and on November 14, 2006 drove the truck to his home in Los Angeles. Later that night or on the following morning the truck and its cargo were stolen.

Based on these facts, Sanchez has not provided a lawful excuse for not delivering the cargo to Best Buy on November 15, 2006 nor has he established freedom from negligence.

7. Sanchez is liable to AFN under the Carmack Amendment for the actual loss in the amount of $540,540.00.

Dated: July 9, 2008                    Respectfully submitted,

                                                **MILES L. KAVALLER**
                                                **A PROFESSIONAL LAW CORP.**


                                                By:_____
                                                   Miles L. Kavaller, Esq.
                                                   Attorney for Plaintiff,
                                                   Advantage Freight Network, LLC.