IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADVANTAGE FREIGHT NETWORK,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>JAVIER SANCHEZ and CARLOS ORTIZ,<br><br>　　　　　Defendants.<br>_____/ | CASE NO. CV-F-07-827-LJO-SMS<br><br>**ORDER ON PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTION**<br>(Docs. 16-22, 24) |

**INTRODUCTION**

Plaintiff Advantage Freight Network ("Advantage Freight") moves for partial summary judgment, pursuant to Fed. R. Civ. P. 56, against defendant Javier Sanchez ("Mr. Sanchez"). Advantage Freight contends that, Mr. Sanchez is a motor carrier, pursuant to 49 U.S.C. §14706(a) ("Carmack Amendment" or "Carmack claim"), and is liable for the actual loss sustained by Advantage Freight in the sum of $540,540 for undelivered freight. Mr. Sanchez opposed this motion on August 15, 2008, and filed a cross-motion for summary judgment. Mr. Sanchez claims that he is not liable for the loss of the freight and the Carmack Amendment is inapplicable. Advantage Freight filed a consolidated reply and opposition on August 27, 2008. Mr. Sanchez replied on August 4, 2008. The Court finds this motion suitable for decision without a hearing and vacated the September 10, 2008 hearing, pursuant to L.R. 78-230(h). For the following reasons, this Court DENIES Advantage Freight partial summary judgment motion and GRANTS in part and DENIES in part Mr. Sanchez's summary judgment motion.

**BACKGROUND**

On November 10, 2006, Advantage Freight hired Mr. Sanchez to transport a shipment of 5,940 Insignia portable DVD players ("the goods" or "the shipment") from Performance Team Northwest in

Puyallup, Washington to Best Buy, Inc. in Dinuba, California.[1] Because Mr. Sanchez experienced trouble with his truck, he asked defendant Carlos Ortiz ("Mr. Ortiz") to transport and deliver the shipment on his behalf. Mr. Ortiz agreed and directed his driver, Alfredo Palma ("Mr. Palma") to pick up the goods and deliver them to Best Buy in Dinuba. Advantage Freight was unaware that Mr. Sanchez asked Mr. Ortiz to transport the goods.

Mr. Palma picked up the goods from Performance Team Northwest on November 10, 2006. Mr. Palma arrived at Best Buy with the goods on November 13, 2006, as instructed on the Rate Confirmation Sheet. Best Buy told Mr. Palma that Best Buy could not accept delivery of the goods until November 15, 2006 at 3:30 p.m. and instructed him to return at that time. Moreover, Best Buy would not permit Mr. Palma to park his truck on Best Buy's premises to await the newly-designated delivery time. Mr. Sanchez called Advantage Freight several times to seek instructions. According to Mr. Sanchez, Advantage Freight failed to respond and provided no instructions. Mr. Ortiz advised Mr. Palma to "park outside of the company and wait until recipient unloaded him."[2]

Mr. Palma drove his truck, with the goods in the trailer, to his home in Los Angeles, California. During the late evening hours of November 14, 2006, or early morning hours of November 15, 2006, Mr. Palma's truck and trailer, with the goods inside, were stolen.

On November 20, 2006, Advantage Freight filed a claim for the loss of the goods on behalf of its customer, Best Buy, in the amount of $540,540 with both Mr. Sanchez and Mr. Ortiz ("the claim"). On March 29, 2007, Best Buy assigned its claim to Advantage Freight after Advantage Freight paid Best Buy $540,540 for the value of the goods lost. Advantage Freight initiated this action on June 7, 2007, asserting a Carmack claim against both defendants and a breach of contract claim against Mr. Sanchez.

## ANALYSIS & DISCUSSION

### Summary Judgment Standards

Advantage Freight moves for summary judgment on its Carmack claim against Mr. Sanchez only.

---

[1] Mr. Sanchez disputes that the sealed cartons contained DVD players. An issue of fact remains as to what goods were in the sealed cartons.

[2] Although Advantage Freight "has no record" of Mr. Palma's arrival at Best Buy, Best Buy's instructions to Mr. Palma, Mr. Sanchez's phone call and message to Advantage Freight, or any other events defendants claim to have occurred at the Best Buy facility on November 13, 2006, Advantage Freight does not dispute these "facts" for purposes of this motion.

Mr. Sanchez moves for summary judgment in his favor on the Carmack and contract claims. On summary judgment, a court must decide whether there is a "genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see also, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). A party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing of sufficient evidence to establish an essential element of the nonmoving party's claim, and on which the non-moving party bears the burden of proof at trial. *Id*. at 322. "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

If the moving party fails to discharge its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes*, 398 U.S. 144, 159-60. "If the party moving for summary judgment meets its initial burden of identifying for the court those portions of the material on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production shifts and the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quoting Fed. R. Civ. P. 56(e)).

To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968). When making this determination, the opposing party's evidence is to be believed and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *Anderson v. Liberty Lobby*, 477 U.S. 242. 255 (1986).

**Carmack Amendment**

Advantage Freight's action arises under 49 U.S.C. §14706(a), referred to as the Carmack Amendment to the Interstate Commerce Commission Act. The Carmack Amendment established a

uniform national liability policy for interstate carriers, and preempts state and common law claims against a carrier for damage tom or loss of, goods. *Hall v. N. American Van Lines,* 476 F.3d 683 (9th Cir. 2007). The Carmack Amendment provides, in pertinent part:

> A carrier providing transportation or service...and any other carrier that delivers the property and is proving transportation or service...are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is the for actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported...Failure to issue a receipt or bill of lading does not affect the liability of a carrier.

The Carmack Amendment codifies the common-law rule that "a carrier, though not an absolute insurer, is liable for damage to goods transported by it unless it can show that the damage was caused by" one of the recognized exceptions, which are: (a) an act of God; (b) an act of a public enemy; (c) an act of the shipper; (d) public authority; or (e) the inherent nature of the goods. *Miss. Pac. R.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 138 (1964).

To recover for lost goods pursuant to the Carmack Amendment, Advantage Freight must establish the following as a prima facie case: (1) good condition of the shipment at the point of origin; (2) a loss or damaged condition at destination; and (3) the amount of its damages. *Id*. at 137-38. If Advantage Freight establishes a prima facie Carmack claim, the burden of proof shifts to Mr. Sanchez to prove that: (1) the damages were caused by one of the five common law exceptions; and (2) he was free from negligence. *Id*. If Mr. Sanchez fails to prove these elements, he is liable to Advantage Freight for the damages caused as a result of the loss of the shipment entrusted to his care. *Id*.

Advantage Freight contends that it establishes a prima facie Carmack claim, because the undisputed facts demonstrate that the goods were in a good condition at the point of origin, the goods were lost, and the amount of damages. Advantage Freight argues that Mr. Sanchez is unable to prove that the five common law exceptions apply or that he was free from negligence. Advantage Freight concludes that, as a matter of law, Mr. Sanchez is liable pursuant to the Carmack Amendment.

Mr. Sanchez disputes that the evidence demonstrates that the goods were in a good condition at the point of origin. Additionally, Mr. Sanchez disputes the Carmack Amendment is applicable. Mr. Sanchez contends that he is not liable under the Carmack Amendment, because he was not a "motor carrier" within its meaning. Mr. Sanchez argues further that liability under the Carmack Amendment

was extinguished by Best Buy's refusal to accept the delivery of the goods on November 13, 2006.

Before considering whether Advantage Freight established a prima facie case under the Carmack Amendment, the Court first considers whether the Carmack Amendment, or state law, governs this dispute.

**Motor Carrier vs. Warehouseman**

Mr. Sanchez was a "motor carrier" within the meaning of the Interstate Commerce Act when he agreed to transport the goods. A "motor carrier is a person providing motor vehicle transportation for compensation." 49 U.S.C. §13102(14). "Transportation" is defined as, *inter alia*, "services related to [the] movement [of passengers, property, or both], including arranging for, receipt, delivery, elevation, transfer in transit...storage...and interchange of passengers and property." 49 U.S.C. §13102(23)(B). "Liability under the Carmack Amendment...extends beyond the carrier who actually provides the transportation. It extends to any carrier providing transportation or service." *Land O'Lakes, Inc. v. Superior Service Transportation of Wisc., Inc.*, 500 F. Supp. 2d 1150, 1155 (E.D. Wisc. 2007) (quoting 49 U.S.C. §14706(a)(1)) (party who arranged for another party to broker the transportation was a "motor carrier" within the meaning of the Interstate Commerce Act); *see also, Mach Mold, Inc. v. Clover Assocs., Inc.*, 383 F. Supp. 2d 1015, 1030 (N.D. Ill. 2005) (finding that a party who was authorized to transport goods, and accepted and legally bound itself to do so, was a "motor carrier" for purposes of the Interstate Commerce Commission Act). Thus, the Carmack Amendment applied at the time Mr. Sanchez agreed to transport the goods for Advantage Freight, and arranged for their transportation.[3]

Best Buy's refusal to accept the goods, when Mr. Palma attempted deliver them on November 13, 2006, extinguished Mr. Sanchez's liability under the Carmack Amendment. The parties do not dispute that Best Buy refused to accept the goods when Mr. Palma arrived to deliver them on that day. Advantage Freight argues that no delivery occurred because Best Buy advised Mr. Palma to return on November 15, 2006. However, "a tender of delivery, if refused by the consignee, [] terminate[s] the carrier's responsibility as an insurer" under the Carmack Amendment. *Gen. Am. Transport. Corp. v.*

---

[3] As discussed more fully *infra*, Mr. Sanchez does not qualify as a "motor carrier" within the meaning of this statute after Best Buy refused delivery. Although the definition of "transportation" includes "storage," 49 U.S.C. §13102(23), a "motor carrier" provides transportation for compensation. 49 U.S.C. §13102(14). Mr. Sanchez did not provide, and did not agree to provide, storage services for compensation.

*Indiana Harbor Belt R. Co.*, 191 F.2d 865, 870 (7th Cir. 1951); *see also Dohrmann Hotel Supply Co. v. Owl Transfer & Storage Co.*, 143 P.2d 441 (Wash. 1943) (shipper's status "immediately changed to that of a warehouseman" when consignee refused to allow shipper to unload the goods). "Where goods have arrived at their destination, and at the request and for the convenience of the consignee are allowed to remain in the custody of the carrier, its liability as an insurer of the goods ceases and becomes thereafter that of a warehouseman or a depository."*Land O'Lakes*, 500 F. Supp. 2d at 1155 (quoting 13 Am. Jur. 2d. CARRIERS §404). In the absence of a statutory or contractual provision to the contrary, the carrier holds goods remaining in its possession after constructive delivery in the character or capacity of an ordinary bailee or warehouseman. *Rio Grande Motor Way, Inc. v. Resort Graphics, Inc.*, 740 P.2d 517 (Colo. 1987). Here, the Rate Confirmation Sheet Advantage Freight issued to Mr. Palma on November 10, 2006 confirms that the goods were scheduled to be delivered on November 13, 2006 at a time to be determined. Thus, Mr. Palma attempted to accomplish delivery in the agreed-upon manner.[4] Nothing else was required of him legally to make the delivery. No other provision in the contract, Rate Confirmation Sheet, or bill of lading establishes contrary duties and obligations of the carrier. Accordingly, the Carmack Amendment is inapplicable to this dispute and Mr. Sanchez is entitled to judgment as a matter of law on this claim.[5]

## Negligence

As a warehouseman, Mr. Sanchez is liable for damages he caused through negligence. Cal. Com. Code §7204(a) (a warehouseman is liable for damages to goods cause by the failure to exercise reasonable care).[6] A warehouseman, as bailee, is "chargeable only with ordinary care and diligence in safeguarding his bailor's property" *Homan v. Burkhard*, 108 Cal. App. 363, 366 (1930). "When the carrier tenders delivery to the consignee at a suitable time and place and gives him reasonable

---

[4] A second Rate Confirmation Sheet includes a November 15, 2006 delivery time. No party contends that Mr. Palma received that sheet on or before November 13, 2006. Moreover, that sheet has a notation of November 16, 2006 and November 20, 2006, indicating that it was made after the November 13, 2006 delivery.

[5] Although summary judgment of the Carmack claim is appropriate, Advantage Freight may move forward on a negligence claim.

[6] The parties do not dispute that California law applies, in the event that the Carmack Amendment is inapplicable.

6

opportunity to receive the goods, the carrier's strict liability ceases, and if the goods remain in the carrier's custody after that time its responsibility is reduced to that of ordinary bailee or warehouseman, that is to say, liability must depend on proof of the carrier's negligence." *General Am. Transp. Corp. v. Indiana Harbor Belt R. Co.*, 191 F.2d 865 (7th Cir. 1951), *cert. denied*, 343 U.S. 905 (1952).[7]

Questions of fact remain as to whether Mr. Sanchez was negligent. Whether the warehouseman exercised due care is a question of fact for the jury. *Southern Pacific Co. v. Von Schmidt Dredge Co.*, 118 Cal. 368 (1897). "The ultimate burden of proof is on the bailor, where he is seeking to recover for the loss of property which...has been stolen while in the possession of a bailee." *Homan*, 108 Cal. App. 363, 367. Accordingly, summary judgment on this issue is inappropriate.

**Damages**

The parties dispute the amount of damages. Advantage Freight asserts that the value of damages is $540,540, the amount it paid for Best Buy's claim on the loss of the goods. Mr. Sanchez argues that the value of damages is nothing, because Advantage Freight neglected to tell him the value of the freight. Mr. Sanchez relies on Cal. Civ. Code §1840, which states: "The liability of a depositary for negligence cannot exceed the amount which he is informed by the depositor, or has reason to suppose the thing deposited to be worth." Mr. Sanchez argues that he did not know the value of the goods, because he did not know what the goods were. Mr. Sanchez questions whether the goods in the sealed container were in fact DVD players. Moreover, Mr. Sanchez argues that he had reason to believe the value was $100,00 or less, because Advantage Freight was aware that Mr. Sanchez's insurance covers no more than $100,000 in loss liability.

Mr. Sanchez demonstrates successfully that questions of fact remain as to the calculation of damages. To ascertain the amount of damages, a fact-finder will be required to determine whether Mr. Sanchez knew or had reason to know the value of the goods and/or what the value of the goods was. Accordingly, summary judgment is denied on this issue.

**Contract Claim**

In his cross-motion for summary judgment, Mr. Sanchez moves for summary judgment on

---

[7] Although Mr. Sanchez asserts in his introduction that his responsibility was that of a gratuitous bailee, he neglects this position in his discussion and cites no authority to support it.

7

Advantage Freight's contract claim.  Mr. Sanchez argues that: (1) he did not sub-contract the shipment, he simply referred the business to Mr. Ortiz; (2) his referral to Mr. Ortiz is not a material breach of the agreement; and (3) even if Mr. Sanchez breached the agreement by brokering the load, that breach was not the proximate cause of the loss.  Advantage Freight argues that: (1) Mr. Sanchez is liable for the negligent acts of Mr. Ortiz and Mr. Palma, because the Contract Carrier Agreement provides that he is liable for the acts of his agents; and (2) Mr. Sanchez is liable contractually for damages, because the proximate cause of the loss is Mr. Palma's failure to select a secure environment for the storage of the cargo.

Mr. Sanchez fails to satisfy his initial burden of demonstrating that no material issues of fact remain on this issue.  *See Porter v. Arther Murray, Inc.*, 249 Cal. App. 2d 410 (1967) (material breach of contract is generally a question of fact).  Mr. Sanchez attempts to argue factual disputes rather than demonstrate he is entitled to judgment as a matter of law.  Similarly, Advantage Freight demonstrates that  genuine issues for trial exist; namely, whether the Mr. Sanchez materially breached the contract, whether Mr. Sanchez is liable for the acts of Mr. Ortiz and Mr. Palma, and whether Mr. Palma's negligence proximately caused the loss.  Accordingly, summary judgment is denied on this claim.  *See, T.W. Elec. Serv., Inc.* 809 F.2d 626, 630.

## CONCLUSION

For the foregoing reasons, this COURT:

1. DENIES in full Advantage Freight's motion for summary judgment;
2. GRANTS in part Mr. Sanchez's motion for summary judgment (Carmack claim); and
3. DENIES in part Mr. Sanchez's motion for summary judgment (damages, contract claim). IT IS SO ORDERED.

Dated:   **September 10, 2008**               **/s/ Lawrence J. O'Neill**
                                               UNITED STATES DISTRICT JUDGE